[No. 1923.]

## WILLIS COLLINS *v.* THE STATE.

1. BURGLARY.— INTENT OF ENTRY is the essential element of burglary under the Penal Code of this State; and such intent may be to commit any felony or the crime of theft.
2. THEFT.— PROPERTY, to be the subject of theft, must be such as has some specific value capable of being ascertained, and it embraces every species of personal property capable of being taken.
3. SAME — INDICTMENT — EVIDENCE.— It is a general rule both of pleading and evidence that whenever the value of a stolen article affects the penalty for the offense, such value must be alleged and proved. One purpose of the proof in such case is to determine whether the offense is a felony or a misdemeanor under the Code of this State.
4. SAME.— BURGLARY is *per se* a felony, and if committed with intent to steal is punishable as a felony without regard to the value of the property stolen. It is not, therefore, essential to the validity of a conviction for burglary that the indictment should allege, or the proof support, the value of the property stolen. See the opinion on the question.
5. SAME.— CHARGE OF THE COURT though erroneous, if not excepted to, unless it manifests a fundamental error, is not cause for reversal.

APPEAL from the District Court of Grayson. Tried below before the Hon. R. Maltbie.

The conviction in this case is founded upon an indictment which charged the appellant with the burglary of the house of Henry McLure in the day-time, and the theft therefrom of the personal property of the said McLure of the value of $50. The venue was

laid in Grayson county, Texas, and the offense was alleged to have been committed on the 27th day of January, 1885. A term of two years in the penitentiary was the penalty imposed.

Henry McLure was the first witness for the State. He testified that in January, 1885, he lived in a house in Grayson county, Texas, about seven miles from Sherman. The house was a building of two rooms, fronting south, with an outside south and an outside north door. A slide window, with six glass lights, was located in the west end of the building. The chimney was on the west end of the house, and on the side of the window towards the house of Mr. Taylor. The witness left his house to go cattle-hunting, about 8 o'clock on the morning of January 27, 1885, and took his wife with him as far as the house of Mr. Taylor, which was in sight, about a quarter of a mile off. He left the front door, which opened outwards, securely tied with a rope, and propped with a rail. The back door was fastened with a button. The slide window had no fastenings to it, and was not fastened. When witness returned, late on the same day, he found his house closed up just as he left it, but discovered that it had been entered by some one. He found tracks leading to the window, mud on the window sill and wall, and tracks on the floor. The mud on the sill and wall was not splashed, but was jammed, and had the appearance of having been left there by the pressure of a foot. Five or six biscuits and two or three spareribs, left over from breakfast, had been taken. Witness also missed his axe from the wood-pile near the house, and started out to find it, accompanied by Mr. Taylor. They found the axe in the possession of the defendant, where he was chopping wood in the bottom. Witness first met Doc McKinney, who told him that defendant had tried to trade him an axe which looked like witness's axe. Witness passed defendant in the bottom and saw that he had the axe, but said nothing. After he had gone a short distance, Mr. Taylor, who was following a short distance in the rear, called to witness: "Here is your axe." After he was taken into custody, defendant told the witness that he took the axe intending to return it that evening.

The Mr. Taylor alluded to by the witness was the proprietor of the commissary store from which the wood choppers in the bottom were furnished with necessaries. Witness's house was passed daily by many persons going to and from the wood choppers' camp. Witness had nothing of value in the house except bedding, clothing and provisions. His clothing was kept in boxes, his flour in a sack, and his meat in a barrel. He did not recollect how he kept his sugar and coffee. Nothing in the house save the biscuits and spare-ribs

was disturbed, that witness could observe. The tracks which led up to the window were the tracks of a neat number seven or eight shoe. Defendant wore a pair of neat button shoes about a number seven or eight in size. The track they made was, in the witness's opinion, a *fac simile* of the tracks in the yard which led up to the window. Witness had never seen a pair of shoes at all similar to those worn by the defendant in that neighborhood. Witness had no personal acquaintance with the defendant prior to his arrest for this offense. He, defendant, passed the witness's house a few days before the burglary, and asked for directions to a tank, but a short distance off. Witness had seen the defendant at that tank on two or three different occasions prior to that day, and knew that defendant was well aware of the locality of the tank. The front door of witness's house was in plain view of Taylor's house, but the window through which the house was entered could not be seen from Taylor's. The window and both doors were closed when witness and his wife left home in the morning. Witness did not consent to the entry of his house and removal of his property by the defendant or anybody else. Witness had never entered his house himself, at the window, in the presence of Doc McKinney, or of any body else.

Mrs. McLure testified, for the State, that she was at Mr. Taylor's house on the day that her house was entered, and some biscuit and spare-ribs taken. She saw the defendant at the front door of her house about noon on that day, and sent young David Davis from Mr. Taylor's to see what he, defendant, wanted. From the front of the house the defendant passed to the rear of the house, and was out of sight from Taylor's house for twenty or thirty minutes. Witness had often seen the defendant pass her house, traveling the path between the wood camp and Taylor's commissary store, and knew him by sight.

David Davis testified, for the State, that in January, 1885, when McLure's house was burglarized, he was at work at Taylor's house. About noon on that day witness's sister, Mrs. Taylor, and Mrs. McLure, sent witness to McLure's house to see what the man then at the house wanted. When witness reached a point near McLure's house he saw the defendant standing about twenty steps south of the house. Defendant said that he wanted to borrow McLure's axe. Witness told him that McLure had gone to town, and that he, defendant, could not get the axe. Defendant then turned and went back to McLure's yard, which was in the direction of the camp in the bottom where his work was. To go to that camp over that route, which was the nearest route from the Taylor commissary

store, it was necessary to traverse McLure's yard.   The conversation between witness and defendant took place south of the house. The wood-pile in McLure's yard was north of the house.   Defendant had neither axe, biscuit nor spare-ribs in his hands when witness saw and talked with him, nor did witness see him in the house. Some sixty or seventy-five men worked in the bottom, and most of them, in going to and fro between the store and the bottom, passed by McLure's house.

Doc McKinney testified, for the State, that he was at work chopping wood in the Choctaw bottom on the day that McLure's house was burglarized.   Between 11 and 12 o'clock on that day defendant came to him and asked him for something to eat.   Witness told him to take his, witness's, bucket and help himself, which he did.   He · then said that he was going off to get an axe for Wash. Jones to chop with, but said nothing about biscuits and spare-ribs.   About an hour later he returned, eating spare-ribs and biscuits, and with an axe over his shoulder.   He proposed to trade axes with witness, which proposition witness declined, and he went to where he had been previously chopping.   Witness thought that defendant proposed the axe trade in a joke.   Later in the evening McLure and Taylor came to the bottom looking for an axe which they described. Witness told them that defendant had such an axe, and had, but a short time before, proposed to trade it to the witness.   Between fifty and seventy-five wood choppers were then at work in the bottom.

Cross-examined, the witness stated that McLure had his, witness's, axe on one occasion.   He took it from Taylor's house, where witness had left it, without asking witness for it.   Witness went after his axe.   It was then in McLure's house, and McLure entered his house through the window to get the axe for the witness.   This occurred during the same week of defendant's arrest.   Witness saw the track which led up to the window of McLure's house, and the mud on the wall.   McLure asked if witness did not think the track was that of defendant.   Witness replied that he did not, as it was too small.   McLure then tried to get witness to swear, on the trial, that it was defendant's track.   There were a large number of buckets hanging up throughout the woods, but witness did not know whether or not any of them contained biscuits and spare-ribs. Flour bread was generally used by the men at work.   The State closed.

Wash. Jones testified, for the defense, that on the day of the alleged burglary of McLure's house, he, witness, went to work in the

bottom for the defendant.    This was about noon.    Defendant gave witness his axe to chop with, and said that he could go and borrow another.    He afterwards returned with an axe and went to work.

The State, in rebuttal, recalled McLure, who testified that he was in the employ of Mr. Taylor in January, 1885.    He took an old axe from Taylor's house to use in sprouting, in the belief that it belonged to Taylor.    Witness afterwards learned that Doc McKinney owned the axe, and took it to him, offering to pay him for it, but he refused pay.    That axe was never in the witness's house, and witness never entered his house through the window to get it. Witness denied that he had ever called McKinney's attention to tracks in his yard, or suggested to him, McKinney, to swear that those tracks resembled the tracks of the defendant.

The motion for new trial raised the questions discussed in the opinion.

*A. C. Turner*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.    As charged in the indictment, the offense was burglary with intent to commit theft of personal property of the value of $50.

The essential requisite to burglary under our statute is the intent of the entry, and this intent may be to commit any felony "or the crime of theft." (Penal Code, arts. 704, 705.)

With regard to the character of property which may be the subject of theft, it is provided by the Code that "the property must be such as has some specific value capable of being ascertained. It embraces every species of personal property capable of being taken." (Penal Code, art. 725.)

As to value of stolen property, the general rule both as to pleading and proof is that whenever the value of a stolen article affects the penalty for the offense, such value must be alleged and proved. (*Pittman* v. *The State*, 14 Texas Ct. App., 576.) Such proof is essential to determine whether the offense is a felony or misdemeanor, and the line of demarcation between the grades is fixed by our Code at $20. (Penal Code, arts. 735–748; 2 Bish. Crim. Proc. (3d ed.), § 713.)

In burglary, however, the value of the articles stolen has nothing to do with the grade of offense or the assessment of the punishment; for all kinds of burglary, with regard to punishment, are

upon the same general footing, and are punished as felonies. (Penal Code, art. 711.)

It is shown by the evidence in the case before us that appellant, after his burglarious entry, stole from the house some "biscuits" and "spare-ribs." No proof was adduced of the value of the articles stolen. Whilst it is the better practice both to allege and prove value in all such cases (Willson's Crim. Forms, 460, 461, p. 200), a failure to do so, it seems, is neither error as to validity of pleading nor sufficiency of proof. (*Carr* v. *The State*, 19 Texas Ct. App., 637.) In *Sullivan* v. *The State*, 13 Texas Ct. App., 462, it is said: "Theft being the object of the entry, must the value of the goods be alleged? Theft of property under $20 being a misdemeanor in this State, allegation of value would be absolutely necessary if the Code had not extended the law of burglary so as to include all theft, whether felony or misdemeanor. We are of opinion that it is not necessary to charge value." (Citing Bish. Crim. Proc., 2d vol., 146. See 2 Bish. Crim. Proc. (3d ed.), § 713.) If not necessary to allege value, then it is not necessary to prove it, because everything should be stated in the indictment which it is necessary to prove. (Code Crim. Proc., art. 421.)

Some irregularities are pointed out by brief of counsel in the charge of the court, and, whilst it may be obnoxious to criticism in the particulars named, still it was not excepted to, and no fundamental error is made manifest.

It may appear a great hardship to send a party to the penitentiary for two years "for the theft of biscuit and spare-ribs," but it must not be overlooked that the offense is not alone the theft, but the burglarious entry of a house in order to perpetrate the theft, and the value of the articles stolen does not affect the question of punishment.

The judgment is affirmed.

*Affirmed.*